**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**RAMON ABASS,**<br><br>      **Defendant.** | **Case No. 25-CR-079 (TSC)** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

On March 14, 2025, Ramon Abass ("the Defendant") sprang from a vehicle at the sight of police cruisers approaching and fled down a residential street. As officers chased the Defendant on foot, he unlawfully discarded a black Glock 26 nine-millimeter pistol that was loaded with one round of ammunition in the chamber and eight rounds of ammunition in a sixteen round-capacity magazine. For the following reasons and consistent with the plea agreement in this case, the Government respectfully requests that the Court impose a short-split sentence that suspends the term of incarceration for all but for time already served, followed by a term of 5 years supervised probation. The Government's sentencing recommendation seeks to punish and deter the Defendant's behavior, while providing him with the resources, structure, and incentive for his rehabilitation.

**BACKGROUND**

*The Offense*

Shortly before 6:00 PM on March 14, 2025, the Defendant walked to the intersection of Orren Street NE and Neal Street NE, where a gray Nissan Altima was idling on the northeast corner of Neal Street NE. The Defendant got in the rear driver's seat of the vehicle. Soon thereafter, a silver Nissan Maxima parked on the southeast corner of Neal Street NE. The Defendant got out of

the Altima and walked over to the Maxima. He went to the front driver's seat, appeared to retrieve something from inside of the vehicle, and then returned to the Altima.

At approximately 6:00 PM, officers with the Metropolitan Police Department, who were in uniform and patrolling in marked police vehicles, drove to the intersection of Orren Street NE and Neal Street NE, in the District of Columbia, on routine patrol. Just as they arrived, the silver Nissan Maxima began making a right turn onto Orren Street NE. As one of the police vehicles pulled next to the gray Nissan Altima, which was parked on the southeast corner of the intersection, the Defendant opened the rear driver's seat door, sprang from the vehicle, and sprinted away from the officers northbound on Orren Street NE. As the Defendant ran from the officers, they observed the Defendant holding one of his arms against his body as if bracing an object, consistent, based on their training and experience, of an individual holding a firearm. These observations were corroborated by video surveillance showing the Defendant holding one of his arms against his body as he ran while his other arm swung freely.

The Defendant tried to flee by getting into the Nissan Maxima that had just turned right onto Orren Street NE, which had briefly stopped in the middle of the block on Orren Stret NE. But as officers attempted to apprehend the Defendant, the Maxima began driving away with the Defendant still trying to climb into the vehicle.

As officers attempted to grab the Defendant while the Maxima drove away, the Defendant discarded a firearm onto the street, specifically, a Glock nine-millimeter semi-automatic pistol loaded with one round of ammunition in the chamber and eight rounds of ammunition in the magazine. Officers recovered the firearm on the street where it had been discarded by the Defendant.



**Figure 1**



**Figure 2**

*Procedural History*

On March 25, 2025, the grand jury indicted the Defendant on one count of 18 U.S.C. § 922(g)(1) for his unlawful possession of a firearm on March 14, 2025. On December 19, 2025, the Defendant pled guilty to violating D.C. Code § 4503.04(a), Unlawful Discarding of Firearms and Ammunition.

*The Defendant's Criminal History*

According to the Presentence Investigation Report ("PSIR"), the Defendant has at least five prior criminal convictions. His most recent conviction was in 2021 in Prince George's County Circuit Court for Possession with Intent to Distribute Marijuana in Docket No. CT210480X. He was sentenced to five years incarceration, execution of sentence suspended as to all but one year, with the sentence to be served in home detention. The statement of probable cause from the offense indicated that a search of the vehicle being operated by the Defendant yielded a total of over 400

grams of marijuana, a digital scale, and $1,970 in cash. His probation in the matter was ultimately terminated unsuccessfully.

The Defendant committed that 2021 offense while he was on probation for a conviction of Possession with Intent to Distribute Marijuana in Prince George's Circuit Court Docket No. CT210782X. According to the PSIR, in 2020, the Defendant was arrested after officers observed a vehicle run a stop sign at a high rate of speed. When officers initiated the traffic stop, the Defendant immediately exited his vehicle and refused officers' orders to return to vehicle. The Defendant fled on foot but was apprehended after a short chase. A Taurus nine-millimeter handgun with 10 hollow point rounds of ammunition was found in the vehicle, along with a book bag containing 6 bags of marijuana totaling 3,025 grams. As with his 2021 conviction, the Defendant's probation in that matter was ultimately terminated unsuccessfully.

Prior to that, in 2018, the Defendant pled guilty to Transporting a Handgun on a Roadway in Prince George's Circuit Court Docket No. CT180743X. He was sentenced to three years incarceration, execution of sentence suspended as to all but one year, with the sentence to be served on home detention. According to the statement of probable cause, the Defendant was carrying a Sig Sauer 9-millimeter handgun in his left breast pocket of his jacket loaded with twelve rounds of ammunition while operating a vehicle. Once again, the Defendant's probation was terminated unsuccessfully in this matter.

Finally, the Defendant also has two prior convictions for possession of marijuana.

## THE APPLICABLE SENTENCING GUIDELINES AND LEGAL FRAMEWORK

The Defendant's District of Columbia Sentencing Guidelines Offense Severity Group is M8 and his Criminal History Category is Column C, yielding a guideline range of 14 to 32 months of prison, a long split, or a short split. ¶72. A short-split sentence is a sentence where the execution

of the sentence is suspended for all but six months or less. A short-split sentence may include suspension of all but time served, however it cannot include the suspension of all time.

In crafting a sentence, the Court must consider the factors set forth in 24 D.C. Code § 403.01(a), which requires the Court to impose a sentence that: (1) reflects the seriousness of the offense and the criminal history of the offender; (2) provides for the just punishment and affords adequate deterrence to potential criminal conduct of the offender and others; and (3) provides the offender with needed educational or vocational training, medical care, and other correctional treatment. *See* D.C. Code Section 24-403.01(a)(1-3). Furthermore, it is well-established that in determining the appropriate sentence for the defendant under the Voluntary Sentencing Guidelines, "the court may take into consideration any factor other than [race, gender, marital status, ethnic origin, religious affiliation, or sexual orientation]." D.C. Sentencing Guidelines Practice Manual ("Sentencing Guidelines") at 1.1.6 (2025).

This includes a review of the defendant's background, nature, and other crimes. *See Powers v. United States*, 588 A.2d 1166, 1169 (D.C. 1991) (sentencing judge "may conduct an inquiry broad in scope, largely unlimited as to the kind of information received and the source from which it is received"); *Sobin v. District of Columbia*, 494 A.2d 1272, 1275 (D.C. 1985) (courts "must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed").

## SENTENCING RECOMMENDATION

Pursuant to the plea offer, the Government recommends a short-split sentence that suspends all of the sentence but for time already served, followed by five years of supervised probation. This sentence reflects the nature of the offense, the Defendant's criminal history, and provides adequate deterrence to others in the community, while also providing the Defendant with the

opportunity and resources to engage in educational or vocational training, substance abuse treatment and other services designed to prevent the Defendant from reoffending.

### A.  The seriousness of the offense and the criminal history of the defendant

The Defendant's actions in this case are deserving of punishment. The Defendant has pled guilty to discarding a loaded firearm in the middle of a public, residential street. The offense occurred in the early evening on March 14, 2025. As the Court has seen in the body worn camera and video surveillance, residents in the neighborhood were out and going about their business at the time that the Defendant engaged in this conduct. Moreover, the Defendant attempted to climb into a moving vehicle while trying to escape the police. His conduct – fleeing police while in possession of a loaded firearm – caused a danger to himself, police officers, and members of the public. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at *7 (D.D.C. 2023). Moreover, the act of discarding a firearm creates the potential for an unintentional firearm discharge that endangers lives, and at a minimum can cause property damage. Not only is this conduct dangerous, it is also traumatic to those residents of community whose lives are interrupted by the resulting chaos of an arrest for a firearms offense. Simple but essential life tasks, such as walking one's dog or running to the grocery store, are made more difficult and upsetting when one must navigate through a crime scene to do so.

Turning to the Defendant's history and characteristics, this is not the Defendant's first firearms-related offense. While the government acknowledges that the Defendant does not have a history of acts of violence, his prior conduct indicates drug distribution accompanied by the presence of firearms. The Defendant has not been successful on probation in his prior felony

convictions, and moreover, the Defendant's compliance with his release conditions has been intermittent at best. Indeed, the Defendant's recurrent struggles with drug possession and use were clear during the course of his supervision in this matter. The PSIR indicates multiple positive drug tests and behavior consistent with attempting to provide deceptive samples:

- July 14, 2025: tested positive for ETG

- September 2, 2025: tested positive for creatine, indicative or water-loading;

- September 16, 2205: tested positive for fentanyl

- September 23, 2025: tested positive for fentanyl

- October 6, 2025: tested positive for fentanyl

- October 17, 2025: tested positive for marijuana

- October 20, 2025: tested positive for marijuana

- November 3, 2025, November 7, 2025, and November 14, 2025: The Defendant provided urine samples not consistent with human urine.

In short, the defendant's struggle with drug use continues and necessitates a sentence that can provide both continuing drug testing and treatment.

## B. Just punishment and adequate deterrence to the defendant and others

A short-split sentence, which carries with it the possibility of the defendant being incarcerated if he does not comply with the terms of his supervision, provides just punishment and is necessary for specific and general deterrence, as well as public safety. The possibility of incarceration in addition to that time which the defendant has already served is necessary, as the defendant's past period of incarceration clearly did not deter him from illegally possessing a firearm in this case. This sentence is needed to reinforce for the defendant, that there is no room for poor decision making in the context of carrying illegal firearms. The period of incarceration in

this case will also provide general deterrence, as it will signal to convicted felons that if they are to illegally possess a firearm in the future, they will face significant consequences. Further, as the defendant illegally carried this firearm on a busy street in D.C., there is a substantial public safety interest that demands just punishment. An accidental discharge or a heated argument could have, once again, resulted in the loss of life

### C. Rehabilitation and correctional treatment

The defendant has taken responsibility and pleaded guilty; however, the Government is troubled by the repeated convergence of drugs and firearms in the Defendant's life and his struggles to remain in compliance with supervision. In order to stop this history from repeating itself, the defendant needs to learn how to not resort to illicit drug use and stop his pattern of firearms possession. A period of five years of supervised probation can provide the Defendant with tools, resources, and supervision to help him achieve these goals, and will ultimately help protect the safety of the community. If the Defendant cannot accomplish this, he will continue to be a danger to others and to himself.  In the end, it is up to the defendant to decide the direction of his life.  Only he can make the necessary changes to his behavior and mindset, but the opportunities and structure offered through an extensive period of supervised probation can assist him in his rehabilitation.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a short-split sentence, suspended for all but time served, followed by a term of 5 years supervised probation.  This sentence will provide the Defendant with just punishment, and ensure compliance and the safety of the community.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:               */s/ Travis Wolf*
Travis Wolf
N.Y. Bar No. 5483243
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-803-1670
Travis.Wolf@usdoj.gov